David L. Nicholson, Jefferson Circuit Clerk
600 West Jefferson Street
Louisville, KY 40202-4731



## USPS CERTIFIED MAIL

Case Number: 23-CI-001759

9236 0901 9403 8307 6245 25

Restricted Delivery

LOUISVILLE METRO GOVERNMENT
MIKE O'CONNELL, COUNTY ATTORNEY
200 S. FIFTH STREET, 300 N
LOUISVILLE, KY 40202

Presiding Judge: HON. JULIE KAELIN (630451)



## KCOJ eFiling Cover Sheet

Case Number: 23-CI-001759

Envelope Number: 5742719

Package Retrieval Number: 574271939744787@00001027647

Service by: Certified Mail

Service Fee:  $ 0.00

Postage Fee: $ 16.13

The attached documents were generated via the Kentucky Court of Justice eFiling system. For more information on eFiling, go to http://courts.ky.gov/efiling.

ackage : 000001 of 000026

This page was intentionally left blank



| AOC-E-105<br>Rev. 9-14 | Sum Code: CI | | Case #: **23-CI-001759** |
|---|---|---|---|
| Commonwealth of Kentucky<br>Court of Justice    *Courts.ky.gov* | | | Court: **CIRCUIT** |
| CR 4.02; Cr Official Form 1 | **CIVIL SUMMONS** | | County: **JEFFERSON Circuit** |

*Plantiff*, **ESTATE OF RILEY WILSON STEPHENS VS. LOUISVILLE METRO GOVERNM**, *Defendant*

TO:  **LOUISVILLE METRO GOVERNMENT**
**MIKE O'CONNELL, COUNTY ATTORNEY**
**200 S. FIFTH STREET, 300 N**
**LOUISVILLE, KY 40202**

The Commonwealth of Kentucky to Defendant:
**LOUISVILLE METRO GOVERNMENT**

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

David L. Nicholson

Jefferson Circuit Clerk
Date: **3/17/2023**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20_____          _____
                                                                    Served By

                                                                    _____
                                                                    Title

---



Page 1 of 1




This page was intentionally left blank

COMMONWEALTH OF KENTUCKY
30th JUDICIAL CIRCUIT
JEFFERSON CIRCUIT COURT
CIVIL ACTION NO. 23-CI-_____

*ELECTRONICALLY FILED*

GLORIA STEPHENS, INDIVIDUALLY AND AS ADMINISTRATRIX
OF THE ESTATE OF RILEY WILSON STEPHENS,                          PLAINTIFF

VS.

LOUISVILLE METRO GOVERNMENT
d/b/a LOUISVILLE METRO POLICE DEPARTMENT (LMPD)                  DEFENDANTS
    SERVE:  Craig Greenberg, Mayor
        Louisville Metro
        527 W. Jefferson Street
        Louisville, KY 40202

    SERVE:  Mike O'Connell
        Jefferson County Attorney's Office
        200 S. Fifth Street, 300 N
        Louisville, KY 40202

CRAIG GREENBERG, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS MAYOR OF LOUISVILLE METRO GOVERNMENT
    SERVE:  Craig Greenberg, Mayor
        Louisville Metro
        527 W. Jefferson Street
        Louisville, KY 40202

ERICKA SHIELDS, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS
LOUISVILLE METRO POLICE CHIEF
    SERVE:  Ericka Shields
        Louisville Metro Police Department
        2911 Taylor Boulevard
        Louisville, KY 40208

JACQUELYN GWINN-VILLAROEL, INDIVIDUALLY AND IN HER
OFFICIAL CAPACITY AS DEPUTY CHIEF LOUISVILLE METRO
POLICE DEPARTMENT AND INTERIM CHIEF LOUISVILLE METRO
POLICE DEPARTMENT
    SERVE:  Chief Jacquelyn Gwinn-Villaroel
        Louisville Metro Police Department
        2911 Taylor Boulevard
        Louisville, KY 40208



MALCOM MILLER, Individually and in his Official Capacity as
LOUISVILLE METRO CITY POLICE
      SERVE: Malcom Miller
              Louisville Metro Police Department
              2911 Taylor Boulevard
              Louisville, KY 40208


UNKNOWN OFFICERS, Individually and in their Official Capacity as
LOUISVILLE METRO CITY POLICE
      SERVE:  Chief Jacquelyn Gwinn-Villaroel
              Louisville Metro Police Department
              2911 Taylor Boulevard
              Louisville, KY 40208


## COMPLAINT

********

Comes the Plaintiff, Gloria Stephens, Individually and as Administratrix of the Estate of

Riley Wilson Stephens, by and through counsel, and for her complaint against defendants,

Louisville Metro Government d/b/a Louisville Metro Police Department (LMPD), Craig

Greenberg, Mayor, Chief of Police Ericka Shields, Jacquelyn Gwinn-Villaroel Deputy Chief and

Interim Chief, Officer Malcom Miller; and unknown Officers, alleges as follows:

### COUNT I
### CLAIM FOR DAMAGES UNDER 42 U.S.C.A. § 1983
### FOR THE USE OF EXCESSIVE FORCE

1.      This is an action for damages for unlawful violation of civil rights under 42 U.S.C.A. §

1983, violation of the Americans with Disability Act and various state claims.

2.      All damages complained of herein exceed the jurisdictional prerequisites of this Court

and all acts complained of herein occurred in Jefferson County, Kentucky.  Jurisdiction and

venue are established in the Jefferson Circuit Court.

3.    Plaintiff, Gloria Stephens, is the mother of Riley Wilson Stephens, deceased. Riley Wilson Stephens was shot and killed by LMPD Office Malcom Miller on March 18, 2021 at the age of 29. Gloria Stephens is a resident of Princeton, Caldwell County, Kentucky. Gloria Stephens was appointed Administratrix of the Estate of Riley Wilson Stephens by Order of Warren District Court, Probate Division, on March 14, 2023. (Exhibit 1).

4.    Defendant, Louisville Metro Government d/b/a Louisville Metro Police Department (LMPD), was at all times relevant hereto a governmental entity with capacity to sue and be sued, and it was at all times relevant hereto the public employer of Defendants, former Chief Ericka Shields, Deputy Jacquelyn Gwinn-Villaroel, Officer Malcom Miller and unknown officers of the LMPD.

5.    Defendant, Chief Ericka Shields, was the chief of police and employed by Louisville Metro Government d/b/a Louisville Metro Police Department (LMPD), and was at all times material was acting within the scope of her employment under color of state law.

6.    Defendant, Interim Chief Jacquelyn Gwinn-Villaroel and as former Deputy Chief, is and was deputy chief of police and employed by Louisville Metro Government d/b/a Louisville Metro Police Department (LMPD), and was at all times material was acting within the scope of her employment under color of state law.

7.    Defendant, Officer Malcom Miller, is and was a police officer employed by defendant, Louisville Metro Government d/b/a Louisville Metro Police Department (LMPD), and was at all times material acting within the scope of his employment and under color of state law.

8.    Defendant, Unknown Officers, at all material times were employed as law enforcement officers by defendant County and were acting within the course and scope of their employment. Defendants, Unknown Officers, are being sued in their individual capacities.



9.    Louisville Metro Government d/b/a Louisville Metro Police Department (LMPD) is a Kentucky municipal corporation, and is charged, inter alia, with the duty to supervise, manage and control its Police Department to prevent the violation of the civil rights of its citizens.

10.    Craig Greenberg was the Mayor of Louisville Metro Government and it was his duty to supervise, manage and control the LMPD to prevent the violation of the civil rights of its citizens.

11.    On March 18, 2022, at approximately 7:55 a.m., Riley Wilson Stephens, while in the parking lot of The Altenheim Senior Health Care Community located at 936 Barret Avenue in Louisville, KY when the police was called to the scene. The police officers used loud verbal commands and aggressive behavior as they approached Riley.

12.    Riley had been struggling with his mental health and had been released from the University of Louisville Hospital the evening prior on March 17, 2022.

13.    Riley was on the street in obvious distress suffering from a mental/emotional breakdown including cutting himself and bleeding as police arrived.

14.    Officer Malcom Miller, along with two other officers arrived on the scene to see Riley suffering a breakdown and cutting himself and immediately began aggressively speaking to Riley and drawing weapons due to his obvious mental and behavioral issues.

15.    Although reasonable officers would recognize Riley as an individual in the midst of a mental/emotional breakdown, the LMPD officers immediately began taking actions that escalated the situation and led directly to the using of lethal force.

16.    The officers began yelling loudly, commanding Riley to comply with their verbal commands causing confusion, panic, and chaos for the mentally spiraling man.

17.    The encounter quickly escalated to a situation where force would be used.

18.    After confronting Riley, escalating the situation, Officer Malcom Miller killed Riley by discharging his weapon into Riley in a completely unnecessary use of lethal force.

19.    The actions of the officers were in contravention of training and how reasonable officers are trained to handle individuals with behavioral health issues.

20.    Reasonable officers are trained to de-escalate situations by giving time and space and speaking in a clear, concise, calm manner to de-escalate the situation.

21.    The LMPD through the Mayor and the command staff defendants were aware of a culture and practices where officers were aggressively policing people in behavioral crisis and ignored or intentionally allowed officers to escalate situations leading to the use of excessive force including lethal force.

22.    These actions of ratifying and accepting inappropriate and overly aggressive tactics when dealing with behaviorally challenged individuals by the command defendants were a direct and proximate cause of why lethal force was used against Riley.

23.    The LMPD, Louisville Metro Government, and command staff defendants acknowledge and admit the issues and problems with their officers and the culture they created and allowed to continue when they entered into a consent decree with the USDOJ wherein they acknowledged the issues.

24.    Officer Malcom Miller and the unidentified officers quickly surrounded Riley with weapons out and escalated the encounter where lethal force was used.

25.    The actions and escalation created and led to the death of Riley Stephens.

26.    At all times material, defendant police officers had a duty under the Fourteenth Amendment to the Constitution of the United States to refrain from the use of excessive force in



approaching an individual in behavioral mental crisis and not create a solution where lethal force was used.

27.      On information and belief, defendants failed to coordinate their actions and acted without proper and generally accepted supervision in the tactics to be employed to resolve decedent's mental health situation peaceably.

28.      Defendant Miller and the unknown defendants failed to follow generally accepted law enforcement standards and de-escalation tactics for safely handling and apprehending a mentally and/or emotionally disturbed person, on which they had been trained since their police academies. Those generally accepted standards and de-escalation tactics include but are not limited to: to request back-up; to request and/or wait for a supervisor to come to the scene if possible; to have the supervisor (or if a supervisor is unavailable, then an experienced lead officer) take the lead in coordinating and communicating an appropriate plan by all officers; to contain the mentally disturbed individual at a safe distance for officers, the individual, and others; to communicate with the individual through a single officer; to speak calmly and in a non-threatening manner with the individual to try to engage the individual in a dialog; to avoid threatening or frightening the individual with unnecessary display or use of weapons or unnecessarily provocative tactics; to avoid issuing conflicting commands to the individual; to use time to communicate with the individual and to allow the individual time to understand, de-escalate, and calm down; to avoid officers placing themselves in zones of danger or in positions where officers cannot retreat or re-position if necessary; to avoid provoking the individual with premature and/or unnecessary uses of force or aggressive tactics; and to avoid officers creating the situation where deadly force is used; to remember that a person having a mental health crises

is not a criminal and that different tactics are necessary rather than resorting to significant force against a mentally disturbed person.

29.    At all material times, and alternatively, the actions and omissions of each defendant were intentional, wanton and/or willful, conscience shocking, reckless, malicious, purposely harmful and/or deliberately indifferent to decedent's rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

30.    Notwithstanding that duty, defendant police officers were then and there guilty of one or more of the following wrongful acts and/or omissions to act, in that they, or each of them, used loud verbal commands, failed to designated a primary communicator, surrounded Riley creating a scene of chaos and failing to allow the time and space Riley needed to process what was happening with his obvious diminished mental abilities, then firing their agency-issued service weapon, striking Riley Wilson Stephens, being recklessly indifferent to his medical needs, and causing his death.

31.    After wrongfully battering plaintiff and causing him to sustain injuries which led to death, defendants wrongfully failed to assure that plaintiff received appropriate medical treatment.

32.    As a direct and proximate result of defendants' wrongful acts or omissions to act, plaintiff suffered severe and permanent injury to his person, pain, suffering, disability, loss of income, mental anguish, humiliation, diverse injuries and death.

33. By the actions and omissions described above, Defendants violated 42 U.S.C.A. § 1983, depriving Decedent of the following clearly established and well-settled constitutional rights protected by the First, Fourth and Fourteenth Amendments to U.S. Constitution:



a. The right to be free from unreasonable searches and seizures as secured by the Fourth Amendment;

b. The right to be free from excessive and unreasonable force in the course of arrest or detention, including the use of unlawful deadly force, as secured by the Fourth Amendment;

c. The right to be free from the use of force, including deadly force, that shocks the conscience and that is used without a legitimate law enforcement purpose as secured by the Fourteenth Amendment;

d. The right to be free from wrongful government interference with familial relationships, and Decedent's right to companionship, society and support of each other, as secured by the First and Fourteenth Amendments.

34. By the actions and omissions described above, Defendants violated 42 U.S.C.A. § 1983, depriving Plaintiffs of the following clearly established and well-settled constitutional rights protected by the First and Fourteenth Amendments to U.S. Constitution:

a. The right to be free from wrongful government interference with familial relationships, and Plaintiffs' right to companionship, society and support of their husband, father, and son, as secured by the First and Fourteenth Amendments.

35. Defendants subjected Plaintiffs and Decedent to their wrongful conduct, depriving Plaintiffs and Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs (individually and on behalf of Decedent, Deceased) and others would be violated by their acts and/or omissions.

36. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages as set forth at paragraph 32, above.

37. The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C.A. § 1983 and Kentucky law.

38. Plaintiffs are also entitled to reasonable costs and attorney fees under 42 U.S.C.A. § 1988 and applicable federal and Kentucky statutes.

## COUNT II
### CLAIM FOR DAMAGES UNDER 42 U.S.C.A. § 1983 FOR RECKLESS INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS

39.     Plaintiff here realleges the allegations of paragraphs 1 through 38 of as if fully set forth.

40.     The failure by defendants to assure that plaintiff received proper medical evaluation and treatment prior to being shot was in violation of plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States to be free from the excessive use of force and to be free from reckless indifference to his serious medical needs.

41. As a direct and proximate result of defendants' wrongful acts or omissions to act, plaintiff suffered severe and permanent injury to his person, pain, suffering, disability, loss of income, mental anguish, humiliation, other diverse injuries and death.

## COUNT III
### MONETARY CLAIM AGAINST DEFENDANT METRO AND MAYOR

42.     Plaintiff here realleges the allegations of Paragraphs 1 through 41 as if fully set forth.

43.     Defendant Louisville Metro Government is a Kentucky municipal corporation which operates, administers, maintains and controls the Louisville Metro Police Department (LMPD) as one of its executive branches.

44.     Defendant, Craig Greenberg, individually and in his official capacity administers, controls and manages the Louisville Metro Police Department (LMPD) as one of his executive functions.



45.    Defendant Metro and Mayor have established policies and procedures for the Police Department regarding the use of force, and regarding the provision of medical service to prisoners and detainees.

46.    In establishing these procedures, defendant Metro and Mayor had a duty under the Fourth and Fourteenth Amendments to the Constitution of the United States to refrain from enforcing or continuing in effect policies and procedures that created a substantial likelihood that prisoners or detainees would be subjected to the use of excessive force by defendants' Police Department officers, or policies and procedures which created a substantial likelihood that the serious medical needs of prisoners or detainees would not be treated with reckless indifference by its agents, servants and employees employed by defendant city's Police Department.

47.    Notwithstanding their mentioned duties, defendant Metro and Mayor were guilty of one or more of the following wrongful acts or omissions to act in violation of the plaintiff's Constitutional rights, in that it:

(a)    allowed policies and procedures to continue in force and effect which resulted in the use of outrageous and excessive force against plaintiff;

(b)    had a custom and practice of failing to independently and adequately investigate complaints of excessive force;

(c)    had a custom and practice of failing to effectively discipline or retrain police officers who wrongfully utilized excessive force;

(d)    failed to establish appropriate policies and procedures to address and correct the repeated use of excessive force by police officers in traffic stops; and

(e)    allowed the continuance in force and effect of policies and procedures which failed to

protect detainees who had sustained injury from the reckless indifference of defendant Metro's

agents, servants and employees in its Police Department to their serious medical needs.

48.    As a direct and proximate result of one or more of defendants' foregoing wrongful acts or

omissions to act, the plaintiff sustained a violation of her rights under the Fourth and Fourteenth

Amendments to the Constitution of the United States, severe and permanent injury to her person,

pain, suffering, disability, loss of income, mental anguish, humiliation, and other diverse injuries.

**COUNT IV**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND**
**REHABILITATION ACT PLAINTIFFS AGAINST DEFENDANTS**
**(All Defendants)**

49.    Plaintiff realleges the allegations of Paragraphs 1 through 48 as if fully set forth.

50.    Congress enacted the Americans with Disabilities Act ("ADA") upon a finding, among

other things, that "society has tended to isolate and segregate individuals with disabilities" and

that such forms of discrimination continue to be a "serious and pervasive social problem." 42

U.S.C.A. § 121019(a)(2).

51.    The ADA, 42 U.S.C.A. § 12182(b)(1)(A)(iii), provides in pertinent part that "[i]t shall be

discriminatory to afford an individual or class of individuals, on the basis of a disability or

disabilities of such individual or class, directly, or through contractual licensing, or other

arrangements, with a good, service, facility, privilege, advantage, or accommodation that is

different or separate from that provided to other individuals."

52.    Decedent was a "qualified individual" with a mental illness, disability and medical

impairments that limited and/or substantially limited his ability to care for himself and control

his mental, medical or physical health condition as defined under the ADA, 42 U.S.C.A. §

12131(2), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794, 28 C.F.R.



.540(k). Further, Defendants knew or should have known that Decedent was disabled and/or mentally ill and/or emotionally disturbed.

53.     The Louisville Metro Police Department is an agency of Defendant Louisville Metro Government whose services, programs, and/or activities are covered under and governed by the ADA and RA, and regulations promulgated under each of these laws.

54.     Defendant Louisville Metro Government is within the mandate of the RA that no person with a disability may be "excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity." 29 U.S.C.A. § 794.

55.     Further, Plaintiff is informed and believes and thereon alleges that Defendant Louisville Metro Government receives federal financial assistance for the Louisville Metro Police Department.

56.     Under the ADA, the Defendants are mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities …" and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

57.     Also under the ADA, the Louisville Metro Police Department is mandated not to discriminate against any qualified individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation." 42 U.S.C.A. § 12182(a). The ADA applies generally to police "services, programs, or activities." 42 U.S.C.A. § 12132. The ADA applies to arrests, other seizures, and Defendants' contacts with Decedent.

58.     At all material times and as described herein, Decedent (1) was an individual with a disability; (2) was otherwise qualified to participate in or receive the benefit of a public entity's

services, programs or activities, including the Louisville Metro Police Department's services, programs, or activities; (3) was either excluded from participation in or denied the benefits of the Louisville Metro Police Department's services, programs or activities or was otherwise discriminated against by the police department; and (4) such exclusion, denial of benefits or discrimination was by reason of his disability. Defendant Louisville Metro Government is vicariously liable for the conduct of its employees and agents under the ADA and Rehabilitation Act.

59.     Alternatively, defendant Louisville Metro Government, through its employees and agents of the Louisville Metro Police's Office, wrongfully arrested, seized, and shot decedent because Officer Miller and the Unknown police officers misperceived the effects of decedent's disability as criminal activity.

60.     Alternatively, defendants failed to reasonably accommodate decedent's disability in the course of contacting and seizing him, causing him to suffer greater injury in the process than other detainees or arrestees, including death. Decedent's need for accommodation was obvious and apparent, based on the totality of the circumstances, unknown defendants actual knowledge, and defendants' training on generally accepted law enforcement standards. The reasonable accommodation that defendants were required to provide, and failed to provide, include having officer defendants follow state training and generally accepted standards for safely handling mentally ill and/or emotionally disturbed individuals and other appropriate tactics and alternatives, including as described above.

61.     As a direct and proximate result of defendant's violations of the ADA and Rehabilitation Act, decedent died and his estate is entitled to damages, penalties, costs and attorneys' fees as set forth above.



## COUNT V
### 42 U.S.C.A. § 1983 (Supervisory Liability)
### PLAINTIFFS AGAINST DEFENDANTS LOUISVILLE METRO GOVERNMENT, CHIEF ERICKA SHIELDS AND JACQUELYN GWINN-VILLAROEL

62.     Plaintiff realleges the allegations of Paragraphs 1 through 61 as if fully set forth.

63.     At all material times, defendants Louisville Metro Government and the command defendants had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other defendants employed by The Louisville Metro Police Department, as well as all other employees and agents of the police department.

64.     Defendants Louisville Metro Government and the command defendants failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the employees of the police department, including Officer Miller and the unknown officer's and other Louisville Metro Government and police department personnel, with deliberate indifference to decedent's, and others' constitutional rights, which were thereby violated as described above.

65.     As supervisors, defendants, Louisville Metro Government and the command defendants each permitted and failed to prevent the unconstitutional acts of other defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights and serious medical needs of decedent. Each of these supervising defendants either directed his or her subordinates in conduct that violated decedent's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive decedent of rights, or knew his or her subordinates were engaging in acts likely to deprive decedent of rights and failed to act to

prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of

a known or obvious training deficiency that he or she must have known would cause

subordinates to violate decedent's rights, and in fact did cause the violation of decedent's rights.

Furthermore, each of these supervising defendants is liable in their failures to intervene in their

subordinates' apparent violations of decedents' rights.

66.    The unconstitutional customs, policies, practices, and/or procedures of defendant

Louisville Metro Government, stated herein, were directed, encouraged, allowed, and/or ratified

by policymaking officers for defendant Louisville Metro Government and its police department,

including defendants Louisville Metro Government  and the command defendants, with

deliberate indifference to decedent's, and others' constitutional rights, which were thereby

violated as described above.

67.    The unconstitutional actions and/or omissions of the command defendants, Officer

Miller, the unknown officers, and other police department personnel, as described above, were

approved, tolerated, and/or ratified by policymaking officers for the Louisville Metro

Government and its police department, including the command defendants. Plaintiffs are

informed and believe and thereon allege that the details of this incident have been revealed to

defendants Louisville Metro Government  and the command defendants and that such defendant-

policymakers have direct knowledge of the fact that the death of decedent was not justified or

necessary, but represented objectively unreasonable uses of force. Notwithstanding this

knowledge, on information and belief, defendants Louisville Metro Government  and the

command defendants have approved and ratified of the conduct and decisions of Officer Miller

and the unknown officers in this matter, and have made a deliberate choice to endorse such

conduct and decisions, and the basis for them, that resulted in the death of decedent. By so doing,



defendants Louisville Metro Government and the command defendants have shown affirmative agreement with the individual defendants' actions and have ratified the unconstitutional acts of the individual defendants. Furthermore, plaintiffs are informed and believe, and thereupon allege, that defendants Louisville Metro Government and the command defendants and other policy-making officers for the Metro were and are aware of a pattern of misconduct and injury, and a code of silence, caused by Metro law enforcement officers similar to the conduct of defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the Metro area.

68.     These customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of defendants Louisville Metro Government and the command defendants were a moving force and/or a proximate cause of the deprivations of decedent's clearly established and well-settled constitutional rights in violation of 42 U.S.C.A. § 1983, as more fully set forth above.

69.     Defendants subjected decedent to their wrongful conduct, depriving decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent and others would be violated by their acts and/or omissions.

70.     As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of defendants Louisville Metro Government and the command defendants as described above, plaintiffs sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees as set forth above.

## COUNT VI
### STATE LAW CLAIM FOR COMMON-LAW BATTERY

71.     Plaintiff realleges as if fully set forth the allegations of Paragraphs 1 through 70 as if fully set forth.

72.     At all times material, defendant police officers were on duty as uniformed defendant Metro police officers and were acting in the scope of their employment by defendant Metro as police officers.

73.     Defendants' above-described acts constitute a battery under the common law of Kentucky.

74.     The described acts were done without cause or provocation by plaintiff and with the intent to cause plaintiff injury.

75.     As a direct and proximate result of defendants' described acts, plaintiff suffered severe and permanent injury to his person, pain, suffering, disability, loss of income, mental anguish, humiliation, other diverse injuries and death.

## COUNT VII
### STATE LAW CLAIM FOR GROSS NEGLIGENCE OR WILLFUL AND WANTON MISCONDUCT

76.     Plaintiff realleges the allegations of Paragraphs 1 through 75 as if fully set forth.

77.     At all times material, defendant police officers, individually and as agents, servants, and employees of defendant Metro, had a duty to refrain from causing injury to plaintiff through gross negligence or willful and wanton misconduct.



78.     In breach of their duty to refrain from causing injury to plaintiff through their gross negligence or willful and wanton misconduct, defendant police officers, as agents, servants and employees of defendant Metro and Mayor, were guilty of one or more of the following grossly negligent and/or willful and wanton acts or omissions to act, in that defendants:

(a)     willfully and wantonly or with gross negligence the defendant police officers used loud verbal commands in an attempt to deescalate the situation with the plaintiff, although defendants knew, or should have known, that such conduct posed an unreasonable risk of causing serious injury to plaintiff;

(b)     willfully and wantonly or with gross negligence defendant police officers fired their agency-issued service weapon, striking plaintiff causing his death, although defendants knew, or should have known, that such conduct posed an unreasonable risk of causing serious injury to plaintiff;

(c)     willfully and wantonly or with gross negligence or recklessly used excessive force in order to cause plaintiff injury although defendants knew, or should have known, that such conduct posed an unreasonable risk of causing serious injury to plaintiff; and

79.     As a direct and proximate result of one or more of defendants' wrongful acts or omissions to act, plaintiff sustained severe and permanent injury to plaintiff's person, pain, suffering, disability, loss of income, mental anguish, humiliation, other diverse injuries and death.

WHEREFORE, plaintiff demands judgment against defendants, and each of them, in an amount exceeding the jurisdictional limits of this Court and for compensatory damages, punitive damages against defendants, and each of them, in an amount sufficient to deter the described wrongful conduct in the future, and plaintiff's costs of suit. Plaintiff demands trial by jury.

Respectfully submitted,

*/s/ Bryan K. Sergent*
BRYAN K. SERGENT
R. SCOTT MADDEN
MADDEN SERGENT, PLLC
ATTORNEYS AT LAW
116 LAWYER STREET, SUITE 1
MANCHESTER, KENTUCKY 40962
(606) 598-6124
(606) 598-6129 Fax
Email: bryan@maddensergent.com
Email: scott@maddensergent.com

This page was intentionally left blank

Filed    Tendered    23-CI-001759    03/17/2023    David L. Nicholson, Jefferson Circuit Clerk
                     22-P-00259      03/09/2023    Brandi Duvall, War...    Circuit Clerk

COMMONWEALTH OF KENTUCKY
WARREN DISTRICT COURT
CASE NO.: 22-P-00259

IN RE: THE ESTATE OF RILEY WILSON STEPHENS

**ORDER SETTING ASIDE ORDER DISPENSING
WITH ADMINISTRATION AND TO REOPEN ESTATE**

**\*\*\*\* \*\*\*\* \*\*\*\***

**WHEREAS** this matter being before the Court on motion of the movant, Gloria Stephens, to set aside the Order Dispensing with Administration and to reopen the Estate appointing her as Administratrix and the Court being otherwise fully and sufficiently advised;

**IT IS HEREBY ORDERED** that good cause being shown, the estate shall be reopened immediately and shall remain open pending further orders of this Court.

**IT IS FURTHER ORDERED** that Gloria Stephens is hereby appointed as Administratrix of the Estate of Riley Wilson Stephens.

Dated this the 14 day of March, 2023.

_____
JUDGE, WARREN DISTRICT COURT

**DISTRIBUTION:**

Bryan K. Sergent            (   )
R. Scott Madden
Madden Sergent PLLC
116 Lawyer Street, Ste 1
Manchester, KY 40962

Gloria Stephens             (   )
PO Box 383
Princeton, KY 42445

_____
Clerk's initials and date

AS CLERK OF THE WARREN CIRCUIT/DISTRICT COURT, I DO CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL ENTERED OF RECORD IN MY OFFICE IN TESTIMONY WHEREOF WITNESS MY HAND THIS 14th DAY OF March 2023
BRANDI DUVALL, CLERK
BY: _____ D.C.

TD : 000001 of 000001

Tendered    22-P-00259    03/09/2023    Brandi Duvall, Warren Circuit Clerk

Filed       23-CI-001759  03/17/2023    David L. Nicholson, Jefferson Circuit Clerk

This page was intentionally left blank